Good morning, Your Honors. Good morning. This is Sylvia Esparza. I represent the petitioner, Ms. Espinosa. The four questions for the Court today are whether the BIA used the wrong legal standard to establish that she had suffered past persecution, whether she established a fear of future persecution on account of her family ties, and whether an internal relocation was reasonable. The facts in this case are pretty clear and incontrovertible. Her family had suffered various acts of violence, which could be used to establish a past persecution. The cases of this Court, Rusak v. Holder, hold that violence against family members can establish past persecution. In that case, Ms. Rusak's mother was raped and her father was beaten, and she had not suffered any persecution, and they held that those acts against her parents could establish past persecution. In the case of Mazury v. Ashcroft, also Ms. Mazury did not suffer any direct physical harm, but rather her husband, who was a taxicab driver, had been assaulted by his passengers, and her children had been beaten up by schoolchildren. She had witnessed some anti-porn mobs in the neighborhood, and the Court also held that she had lived through various acts of violence against her family, which could establish past persecution. Counsel and Judge Smith, I'm having a fair amount of static or audio problem. Are you guys okay? I am too. Mrs. Farza, I don't think it's necessarily your fault, but the quality of the audio is not coming through well. I'm getting the general drift, but for example, when you said the case of... and then the case name, because it's not an usual word, becomes harder to hear. So, could you just, for me, reiterate the names of the two cases that you were just referring to? The family, Rusak v. Holder, and Mazury v. Ashcroft. Yeah, the first one was Gustav. Rusak. Rusak. Okay, Mashri, I got it. Give me the first one again. I'm still having trouble. Rusak. Rusak. Rusak. Got it. Okay, thank you. Now, I'm connecting with my research. Mashri, I knew I was having trouble with Rusak. Please go ahead, but recognize I think we are having some trouble. Okay. Even if this court found that Ms. Espinoza could not establish past persecution, she could still demonstrate eligibility for asylum based on her fear of future persecution, which requires two elements to be met, and that is that she has subjective genuine fear and objective reasonable fear. Counsel, if I may, what I was wrestling with here originally was, number one, whether her family was a particular social group. We now know under Ayala that extortion can qualify as persecution, and it seems to me that she would not have been extorted, but for being a member of the family instead of her brother and so on. That's your position, is it not? Yes, Judge. Is there any case law that you would point us to that has virtually identical factual circumstances? I believe that, well, there's two cases, maybe Mogayan versus INS, where she did not suffer any past persecution, any direct persecution, but she pointed to various close relatives that had suffered past persecution. An uncle had been ransacked, her parents had to flee to Georgia because of constant death threats, and she pointed to a lot of her relatives that had suffered past persecution, and there the court said that there was a pattern and practice of persecution against her family, and that could be sufficient to establish a future fear of persecution. Counsel, what is the evidence here in the record that your client was actually extorted? There wasn't any evidence that she was extorted, but there is evidence that through her testimony, and there's also a detailed affidavit by one of her brothers that was kidnapped, that her family as a whole, right, she has seven siblings, and of those seven siblings, four of them had been persecuted. And so, I mean, I agree that there's credible evidence that family members were persecuted, and that others were extorted, but I don't see anything in the record that she was extorted, and I think that's a big problem for your case. Well, I don't think that she needs to be extorted in order for her to establish that there's a reasonable fear of future persecution. She only has to establish past persecution. I'm sorry? You're referring to, in other words, are you, in response to my colleague's question, are you admitting that there was no past persecution? You relied exclusively on the possibility of future persecution? No, I do believe that there are sufficient facts, and that there is case law to establish past persecution, but if this court found there was no past persecution, she could still establish eligibility for asylum. Well, but doesn't that get back to my colleague's question? If she personally was not extorted, wherein is the past persecution? Now, her family members may have had that, but was she personally persecuted? No, she wasn't, but the case law doesn't demand that she be personally persecuted. In Mogollon v. INS, Ms. Mogollon was never personally persecuted. She pointed to other family members that had been persecuted, and this court found that she could establish that there was a pattern or practice against her family in particular that she could use that to establish a future persecution. So, I don't disagree with the fact that someone theoretically could establish it, but since there is no past persecution here, obviously the BIA was not incorrect in making that determination, right? Well, I mean, I disagree with that because I do think that she can establish past persecution with persecution against her family. So, assuming that I disagree with you on that, what is the evidence that she has a, that the BIA was compelled to conclude that she had a well-founded fear that she would suffer future persecution if she were to return anywhere in Mexico? Right. So, you can establish a fear of future persecution with two elements, right? One, she has subjective fear, which the court found that she was, her fear was genuine, and two, it was objectively reasonable. And you can establish that second prong by pointing to a pattern or practice of persecution against family members. So, she doesn't have to suffer any direct personal persecution. If she can point to family members who've been persecuted, and she's similarly situated, then she can establish that fear of future persecution. But why does the evidence here, where she wasn't extorted, um, compel the conclusion that she would be subject to future persecution? Why are we compelled to find that the BIA got it wrong when there is no evidence that she herself was extorted? Because that's not the case law, your honor. The case law isn't that she has to suffer a direct persecution. She doesn't have to be the only one to suffer extortion. She has to point to other family members who are similarly situated. And that doesn't mean that she also has to be kidnapped, and also some family, like her child has been kidnapped or has to be extorted. She can point to other family members, the circumstantial evidence that happened in close in time, she also assisted with. The similar, the similarly situated, isn't that eliding perhaps the crucial question that is in these other cases, the Belarus Seventh Day Adventists, the family social group had common characteristics that the persecutors could go after. Here, it appears that for whatever reason, they thought correctly that there was money in the family, and that if they kidnapped these particular people, they would get some of it. But whether because they didn't kidnap women as opposed to men, they wouldn't pay the ransoms, whatever, it wasn't similarly situated in that sense. If they had sent letters saying, we're going to get all of you guys one at a time, because you've all got money, then I would, I would go with you a lot more. Whereas here, they went after people that they in fact, were able to get money from and at least as far as we could see, left her alone. What's wrong with that? Well, what's wrong with that is that even after they went after the two initial siblings, Juan and Feliciano, less than three years later, they went after her partner. She also testified as to another brother who had also been kidnapped and was released shortly thereafter, but he was also shot at. So we have various family members who are suffering persecution. So she doesn't have to... I guess what I struggle with, I see under Ayala the point that she could argue that being a member of the family could constitute persecution for purposes of asylum. But in this case, as you've acknowledged, she has not personally been extorted. She's not personally been kidnapped. So if we put aside any past persecution, you're left then with the concept that she might suffer future persecution. And when you get to that, then when you talk about relocation, that's when she bears the burden, right? To show that she could not be relocated without being subjected to the same kind of persecution. Correct. Yes, Judge. But the problem I think here is that you can establish your future persecution if you can point to a pattern or practice of persecution of family members. The case law supports that finding. Mogollon v. INS. In Ayala v. Session, Ayala was never extorted. She actually went to Guatemala. She was on a motorcycle with her husband. She got off the motorcycle. Her husband was later found beaten up. She came back to the United States. In 2007, they murdered her husband. She wasn't even there. And they shot at her house. And this court found that she could point to the evidence, what was happening in her home country with her other family members, to point to a pattern or practice of persecution against her family members. The same thing is happening in Mogollon v. INS. Nothing happened to her, yet she could point to persecution happening to other family members. I acknowledge that, certainly with respect to Ayala. But I guess I just want to be sure we're in agreement. You can see that even under Ayala, there was no past persecution, but that she may have grounds to claim that she would suffer future persecution. Correct? Yes. And the burden of proof with respect to relocation would be on her. Yes. If the court found that there was no past persecution, but to establish relocation is a two-step process. You have to show that relocation is not internally safe and that it's reasonable for her to do so. So here, we are talking about Las Vegas. There was a lot of country condition evidence in the record that showed that not only were they powerful in the area where she resided, but they also have connections with law enforcement, with military, and they can operate throughout the whole country. There was also evidence that they can even operate in the United States. So it wasn't safe for her to relocate in any area of Mexico. And even if this case found that, yes, she could go somewhere, was it reasonable for her to do so? There wasn't any versus Whitaker. This court remanded to the Board of Immigration Appeals that the agency has to conduct an individualized analysis regarding all of the factors in the regulation to see if she can relocate. Is it reasonable for her to do so? Most of her family was already living in the United States. She had relied on the support of her partner for a long time. Since she was 15, she had never worked. And so it wasn't reasonable for her to relocate anywhere else. Okay. And you have a minute and 20 seconds left. You want to save some time for rebuttal? Yes, I'd like to save that for rebuttal. Thank you, Judge. Very well. All right. Let's hear from Mr. Robbins from the government. Can your honors hear me? Yes. Okay. May it please the court. My name is Jonathan Robbins. I'm here on behalf of William Barr, the attorney general. Good morning to all of you. The record in this case does not the agency's denial of petitioner's applications for asylum, withholding of removal, and cap protection. I'll go ahead and start, unless your honors have any objection with the issue of past persecution, since that took up the majority of the discussion. Petitioner has cited to a number of cases to support the proposition that harmed petitioner's family members or friends could support a claim of her own past persecution. And I want to clarify what the law says about that. It is true there are some cases where the harmed petitioner's family does factor into whether or not the individual has established persecution. But there are other cases where the applicant for relief has family members that are harmed, and it doesn't speak to whether or not they have past persecution. An example of that would be cited in our brief, the Wakari case, where the applicant's grandfather had been murdered, but they had still been found to not establish past persecution. So I want to clarify for the court where the court has drawn the line. If you take a look at the published precedent in Tamang v. Holder from 2010, the court said that harm to a petitioner's close family members or associates may be relevant to assessing whether the petitioner suffered past persecution. But the harm generally must be inflicted to send the petitioner a message, to cause the petitioner emotional harm, or as part of a pattern of had not established past persecution. Because if you take a close look at petitioner's claim, it becomes clear that she was not closely tied to her family members. She claimed that the cartel was motivated to harm her family members because of their cheese business. She expressly stated that her family was not an enemy of the cartel. And when asked directly, why do you think the cartel targeted her family members? She said, I think it was because of the business. Now, when she was questioned about her association with the business, she clarified that she had no ownership ties with the business. The business had originally been her father's and her brother's had carried on the business, but she had no ownership ties to the business and she did not work at the business. She was not working at all. She had been supported by her romantic partner for Asensio. So the board and immigration judge in this case reasonably explained that she herself was not subject to past persecution because even though her families had been subject to this extortion, she didn't have any close ties to that. And that is a proper application of what this court's law requires for past persecution. And that's why the record doesn't compel reversal of the past persecution finding. Now, she claimed that basically she felt they were trying to send her a message. What would be your response to that? Well, all it's it's sort of commonly recognized, I think, at this point that most criminal extortion without a tie to a protected ground is not sufficient to warrant a claim for relief within under this court's law. And all extortion, to some extent, is done with the purpose of trying to intimidate. In other words, maybe send a message to the victim so that you extort money. So when I think the court has talked about sending a message, I don't think it has to do with the ordinary sort of intimidating parts that a criminal actor might try to inflict on a victim. I think I think it goes stronger than that when the court is talking about sending a message, trying to send a message specifically to the petitioner to target that petitioner to make them feel the I mean, I'm not sure quite how to put it, but going beyond the mere intimidation you would see in ordinary criminal activities. How would you distinguish this case from Ayala? Well, Ayala was a case that said extortion plus can satisfy can can qualify for relief. But the key word there is plus your honor. In other words, extortion alone is not sufficient to meet the tech to meet the requirements for relief you have is a tie to a statutorily protected ground. So that case is irrelevant here because the board expressly explained here that the that the evidence did not demonstrate that the that the perpetrators of the harm in this case were motivated kind of family affiliation. It was her connection with the family that in fact would have created the problem in the first place. She was fearful that her family or brother and father and so on were being extorted or kidnapped. And she feared that she was going to be subject to a like situation. She would not have had that fear, but for membership in the family. And I know you acknowledge that a family can be a PSP, right? Well, I do for the purposes of this case, the law has changed a little bit after this case, the Attorney General has issued a new decision on family that was not relevant in this case. So I don't want to concede that issue. But for the purposes of this case, yes, family affiliation the board assumed that that would be a social group. But here's the problem. Nexus in order to meet the nexus requirement, it's more you have to show more than that. The perpetrator of the harm knows you have the characteristic. You have to show that they cared that you have the characteristic. We call it a nexus requirement. But what it really is, is a motive requirement. The persecutor has to be motivated on account of the protected ground. And that is where the petitioners claim was deficient, because I think the evidence pretty demonstrably shows here that the cartels were not motivated by any animus against the Espinoza family. In fact, the evidence shows the opposite. For example, when petitioner testified that her brother Feliciano had been kidnapped, he was the brother, as you may recall, who had managed to escape the cartel. And he said that when he had been kidnapped, he was with a whole bunch of other people that had been kidnapped, not just the family. So the evidence shows that the cartel wasn't motivated because of any animus against the family. You're right that it may be the reason that she has proximity to these particular problems, but it's not what was motivating the cartel. And that's the required analysis in the nexus. That's what the Supreme Court has said in INS against Elias Zacharias. It's a motive requirement. And so that's the part that's missing from petitioner's claim. This case is somewhat emblematic of what I think are a lot of cases that come before this court. Very often, we see claims where people are applying for relief from countries that are And the common theme through many of these cases that pervades these cases is that the applicant for relief has a very difficult time showing that the criminal actors in the case are motivated on account of statutorily protected ground. And the reason they face that difficulty is because most of the time, these criminal actors aren't motivated by such a ground. They're motivated by the motivations like we have in this case. They wanted monetary gain. They were trying to extort this family and other families for money, right? They want to expand their wealth. They want to expand their influence. They want to expand their power. But this court has long held, as has the board, as have all the other circuits, that that type of motivation does not implicate a nexus to a statutorily protected ground. I gather you agree with your opposing counsel that the petitioner here did not personally suffer extortion. That's correct, Your Honor. No reason you should know this case because it's 11th Circuit. But there's a recent case, Perez-Sanchez, where I happen to have sat on it, where the family as a whole was being extorted because their father-in-law owed the cartel a large debt. And they came after them one after another. And then the last person was not part of it. I don't know whether you're familiar with that or your colleague was, but I remember the case, Your Honor. I remember the case vaguely, the vague contours of it. What is your mass, what your specific question is with respect to that case? I was throwing that out, both to you and your colleague, as potentially an example on one side of it. Some saw the case because it's colorful. The father-in-law was El Banana, and El Banana owed the cartel a debt. And the whole family was being held liable for his debt. And so the connection was quite strong. So I was just potentially distinguishing that from simply going after people who might have some money. Well, that's true. I certainly think that there are cases where a family would be targeted by a cartel, where they would have a specific animus against a particular family or something of that nature. So our particular claimant had not been extorted yet, you might say. The family still owed the debt, as according to the cartel. Well, I mean, I guess that would have to be an assessment made by the fact finder as to how closely tied the petitioner is to the harm that's being inflicted. But under the circumstances of this case, I think it should be relatively clear from the record that petitioner is not closely tied to those individuals, which probably goes a long way towards explaining why she was never actually threatened or she was never threatened with harm. Not only was she not harmed, she was never threatened with harm. And that seems to be a logical extension of the claim that she was making, that the cartel was interested in the business. She didn't have any ties to the business. So it shouldn't really be surprising in this case that the cartel never threatened her or never threatened her children with harm. I'd like to hear your view on whether by itself it would be dispositive that the board's finding that the testimonial and documentary evidence indicates that the respondent could return to an area in Mexico outside the presence of the here. The fact that the petitioner could relocate, yes, I think it would be dispositive in this case. Assuming you agree with the past persecution finding, it's important to understand that if the court were to disagree with the past persecution finding, the burden proof would shift. Yes, if we were to agree that, including because she was never extorted, there was no past persecution of the petitioner. Yes, the relocation would be dispositive. And the petitioner is that that was a pretty cursory kind of finding. So could you help us with the evidence that you believe supports this such that we're not compelled to find something to the contrary? Yes, the immigration judge's discussion of this is admittedly a bit sparse. It's on page 144 of the record. The immigration judge noted that she was claiming that she couldn't relocate because she would have difficulty finding work. Well, first of all, difficulty finding work is not the same thing as not being able to safely relocate. It may go to difficulties and difficulty finding work isn't a problem that's insignificant. But in terms of being able to safely relocate, it doesn't really inform that analysis. And the immigration judge also pointed out that she was able to successfully relocate from Mexico to the United States. So it really rebutted the notion that she wouldn't be able to relocate because of an inability to find work or something along those lines. Now, as far as the immigration judge's determination that petitioner could relocate to an area outside where the Zetas were operating, I think that's clearly consistent with this court's decision in Singh against Whitaker. Judge Smith, I believe, was the author of the decision on that panel. But the court approved of the agency's... In that case, it was outside the Punjab. It was an applicant from India. But it said that that was specific enough to what the immigration judge did here, which is to say out any area in Mexico outside where the Zetas were controlling. And in fact, this case, the immigration judge went one step further and actually identified a specific place. He identified Mexico City as one such area. So I think that's this... I mean, I can't deny that the decision is somewhat sparse, but I think that may be a reflection of a bit of the sparsity of petitioner's claim with respect to relocation. She didn't really say much about it other than to suggest that she would have difficulty finding work. Well, in terms of meeting with... Yes. Can I switch the subject just a little bit? Because I must confess, this is one of the first times that I recall having something pointed to me in the record when both counsel disagree with it. And in this case, whether there was past persecution. My law clerk discovered that when the second brother, Feliciano, was returned severely injured, it was after Espinosa, Molar and her sister-in-law negotiated with and paid the kidnappers a ransom. Do you... Yes. And if you don't, isn't that the payment of extortion? Wasn't she extorted? Well, she said she was involved in the negotiations and that the family was extorted, but a petitioner herself was never threatened. That was the point. She was involved in the negotiation. That's true. That's not a dispute. She was a member of the family. She would have only been involved in the negotiations because she was a member of the family. She negotiated with them and a payment was made. Whether it came from her directly, I don't know. But she was clearly involved in the payment of an extortion demand. Was she not? Yes. Well, her family was. She was involved in the negotiation. It's not clear that she had received any of the extortion phone calls. She went with her family members to negotiate the ransom. She wasn't going to the movies. She was going to try to get her brother back. And this was the second time that her brother was missing. I have difficulty believing that she was not extorted, that she was part of the negotiations and part of the payment. Do you disagree with that? Well, your honor, the board obviously disagreed. It felt that this harm wasn't the fact that she was involved in the negotiation was harm rising to the level of persecution. But if you were to disagree with that, I would still say that this type of criminal extortion does not implicate the requisite nexus to a protected ground, because, again, the motivation of the persecutor has nothing to do with her family membership. Also, as I understood the facts, the kidnappers contacted Feliciano's wife. They didn't contact the petitioner here. And then that's correct. His wife involved a sister-in-law, the petitioner here in the negotiations. And that's that's correct. That's what we know from the record. Then in terms of who put up the money and why, we just don't know anything about that. Is that fair? Yes, that's an accurate statement of the facts. But I understood that as the sequence. Contact of the wife. Wife brings in the sister-in-law. She is involved in the negotiation. Who raised the money? We don't know. Is that fair? Yes, that's fair. I see no nothing in the record that evinces that or that shows that the cartels or or the ransom, the criminal actors or whoever it was, contacted the petitioner directly in this case. You can see why it's troubling. You know, it's a very, very close issue here. Your Honor, all these cases are troubling. I mean, anytime somebody suffers under the victim as a victim of cartel violence, in these cases are always difficult and, in my view, very sympathetic. But under United States Refugee Law, you have to meet certain requirements, not every type of, don't protect every type of harm. I mean, it's sad to say it, but that's that's the way our law works. And when it comes to criminal extortion, I think it's relatively well established in this court's case law that without showing the tie to a protected ground, an individual is not going to be able to qualify as a refugee. Any other questions from my colleagues? No. We thank you very much, Mr. Robbins. Your presentation is very helpful. Thank you very much for your time. I just wanted to address a couple of issues. First, the case that the government cited to Tamang v. Holder, which is very different than this case. Tamang v. Holder, Mr. Tamang was in the United States when they assaulted his brother at the time. Also, there was a few years between time. And there, this court said that you can't use that single incident of brother's persecution to establish persecution for himself. Plus, Tamang had also admitted that his parents had come back to the home country. They had gone somewhere and they came back safe. And also, that the country conditions had resolved itself. So, Tamang v. Holder is very different. Another issue that the government pointed out several times said that the petitioner, Ms. Espinosa, was not closely tied to any of these events, which is totally not true. In 1994 and 1995, she testified on direct and also on the cross. Why do you think that the cartels were going after you? And she said, because my family is marked. She said that several times. And also... Since you're running out of time, let me just ask you one more time a question I asked before. Was your client the subject of extortion? Judge, I think that you pointed out a good point. And that is that she definitely participated in the negotiations and the ransom of her brother to get her brother back. And so, based on those facts, it would be argued that she was subject to extortion because of that. Okay. And with respect to future persecution, what specifically does she point to to indicate that she has a reasonable fear of future persecution? Right. Because her partner was also kidnapped. Right before she left her, her partner was kidnapped at 11 years. She went to the police to try to report him to get assistance, and they just mocked her and laughed at her and said, oh, you ran off with another woman. Even though there was no evidence to suggest that they had marital problems or that he had just left and took all his belongings. Right after that, they started going after her and they said that they were being followed. She didn't wait. Two weeks later, she was out of Mexico and she went to the United States, which is where the majority of her family is. Counsel, help me with the geography here. I understood that the incident with the partner disappearing was in Tampico. How far was that from the family cheese business? I thought it was two hours, two hour difference. So it's not even there's no indication that the Zetas had anything to do with the disappearance. She pointed out that it was the safest because why would they come after her? Right. So that's that's circular, isn't it? Well, I mean, there are there are there are lots of criminals in Mexico and they're not all Zetas. Not four out of the seven siblings being persecuted. Here she's showing she's the majority of her family members out of seven siblings, four of them have been persecuted. There was a lot more evidence to show that she that her family was being sought after. Okay. Any other questions of counsel by my colleagues? Thank you both for your argument. We appreciate it. The case just argued is submitted and the court stands adjourned for the day.
judges: Boggs, M. Smith, Bennett